Good afternoon, counsel. Good afternoon. My name is Craig Unrath. I represent BNSF Railroad. Imagine you've worked for the railroad for 14 years. And from the very beginning, every month, sometimes a couple times a month, the claw bar you're using, which is a tool you use every day, slips off a railroad spike and you suffer a whiplash injury. You see stars. You have pain in your neck that radiates all the way down your arms, all the way to your fingertips. And this happens a couple times every month. Sometimes once a month, sometimes a couple times a month. And it doesn't just go away. You live with that pain all day long. You take it home with you, take some ibuprofen, and hopefully, hopefully in the morning that pain goes away. There's another aspect of this injury that really stands out. You're the only one that experiences it. You work with a number of different people. They all use the claw bar. They all have claw bars that slip off spikes. They all agree that it creates a jarring sensation. But none of them see stars. None of them have pain that radiates down their arms. Now imagine going to your doctor after the first year of employment. By now, you've experienced this trauma at least a dozen times, maybe as much as two dozen times. And you ask the doctor, what's going on? Now, how many doctors are going to say, you're okay. Keep on doing what you're doing. There's not a problem. It doesn't take an expert to tell you what a doctor would say. The doctor would say, stop what you're doing. Stop it right now. You're injuring yourself. That's just common sense. And it's exactly what happened in this case. When he finally did tell a doctor what he was experiencing, Dr. Tyag told him, stop what you're doing. Now these facts implicate two fundamental issues in this case. The first is whether Mitchell was put on notice of his injury almost from the very beginning of his employment, causing the limitations period to run. And the second issue is whether his failure to seek medical attention in a timely manner constitutes contributory negligence. Now the standard under FELA is familiar to Illinois courts where a plaintiff suffers a repetitive trauma injury that develops over the course of time. A cause of action accrues when a reasonable person knows or in the exercise of reasonable diligence should have known of both the injury and its cause. That's a fairly standard rule of law. Upon experiencing symptoms, a plaintiff has a duty to investigate. And it's that element of diligence that permeates the entire analysis. The limitation period begins to run when a plaintiff should have known that he was being injured. He need not possess actual knowledge of his injury, nor must the injury have reached its maximum severity. Now Mitchell understood what was causing his injury from the very beginning. He knew that it was caused by his claw bar slipping off spikes, something that he said occurred regularly and constantly. Isn't that enough to create a question for the jury? And that's the biggest question in this entire case. The fact that the injury has not reached maximum severity and continued to progress does not alter that analysis. The Supreme Court in Kubrick held that plaintiffs must, again, act diligently. Upon experiencing symptoms, the employee must investigate. And that only makes sense. Mitchell was the only one he knew that experienced these symptoms. At some point, wouldn't you expect that he would say, ask himself, why me? Why am I the only one? Why wouldn't he see a doctor to find out why it was affecting him this way and no one else? A plaintiff argued on appeal that in cases of cumulative trauma, the afflicted employee is considered injured only when he is unable to work. That assertion is based on a misreading, I believe, of the Urey decision, which involved the inhalation of silica dust. In that case, there were no symptoms until he had his medical diagnosis. In this case, we had symptoms from probably his very first month on the job. The Seventh Circuit noted that Urey does not provide an escape for plaintiffs who are aware that some type of injury exists, yet choose to ignore it and fail to seek medical attention. A plaintiff argues that inconsequential injuries are not actionable and do not put employees on notice that they must sue. Well, first of all, we're not asking that he must have sued the first time that a claw bar slipped off a spike. We're suggesting that he should have investigated. Secondly, I honestly cannot imagine how you can view this as an inconsequential injury. I've only experienced seeing stars once in my life, and that was in a football game. Were you a player or a spectator, Urey? Pardon me? Were you a spectator or a player? You don't have to answer. I was hit very hard. As a matter of fact, I think I saw canaries. But leaving that aside, this is not an inconsequential injury. This is a very serious injury. Now, it comes down to a fundamental, critical issue here, is that whether an action was brought within a limitations period is a question of fact for the jury. Now, we fully expected that this case would never go to trial. We thought we were going to win on summary judgment. And at the close of a plaintiff's case, we filed a motion for directed verdict. We thought we were going to win on that, and it wasn't true. But one thing that we could be fairly certain of is that we had put together a sufficient case to go to the jury, and that's where our greatest disappointment lies. The trial court took this issue away from us, took the issue away from the jury, and directed a verdict in favor of the plaintiff. Now, again, I'm back to fundamental principles here. Verdicts should be directed only where the evidence viewed in the light most favorable to the defendants so overwhelmingly favors the plaintiff that no contrary verdict could ever stand. I just do not see how they could possibly have satisfied that standard. A court has no right to direct a verdict if there is any evidence demonstrating a substantial factual dispute. It doesn't have to be much. All we have to show is that there is an issue of fact, and that should go to the jury. The same is true on our claim for contributory negligence. Evidence demonstrated beyond question that the possibility of suffering permanent nerve damages increases significantly the longer you delay seeking treatment. This testimony came from a plaintiff's own expert, who said when you experience symptoms, you've got to check it out. You have to have rest, and you have to seek medical care. Had Mitchell sought out medical care at an early stage, this injury may never have happened. There may not have been any permanent nerve damage. Certainly, the contours of this case would have changed significantly. I mean, he didn't miss any work. I mean, would it seem normal for somebody to see stars, or he has this thing that happens, but then he goes home, he takes aspirin the next morning, goes to work. I mean, is that an injury? You know, I mean, you might get a terrible headache or something, but if you can take an over-the-counter medication, and by the next day, you're ready to go. I guess, you know, how do you know, or how do you put on notice that you have an injury when you feel fine the next day? It's a good question, Your Honor, and I alluded to this in my brief. Every manual laborer is going to come home with aches and pains, every one of them, a sore back, sore feet. But something's different when you're getting pain of a very, to my mind, unusual nature, pain that radiates from your neck all the way down to your fingertips. That's not the same as having sore feet and sore back. That's not tired muscles. That's something wrong there. There's another thing, though, is that everybody on that crew came home with sore muscles and sore back and tired feet, and they all took an ibuprofen. None of them saw stars. None of them had pain reading down their arms. This was a distinct and unusual injury, one that, had he told anyone, any person on the street would say, there's something wrong here. You should check that out. Pain rating down to your fingertips? This is happening a couple of times a month? Plaintiffs argued throughout trial and again on appeal that we're just trying to claim that this is a matter of assumption of risk, which is not an issue we're allowed to raise. Assumption of risk involves where you knowingly accept the risk of your employment, and that's not what we're arguing here. We're arguing contributory negligence. Contributory negligence involves inadvertence, carelessness, unintentional failure to exercise ordinary care for your own safety. That's what we're arguing here. Now, it takes no great stretch of imagination to see that a jury could believe that a reasonable person experiencing the same symptoms that Mitchell experienced would have sought medical care within the first year or two of his employment. Again, Judge Gambrell took that issue away from the jury. We had a right to have the trier affect the side of that issue. Moving on to another issue, and this is one that I find possibly the most startling aspect of this entire case, is that Judge Gambrell allowed a separate verdict line for emotional distress, and a substantial award was given for emotional distress. Now, we all learned in law school that damages for emotional distress are appropriate where a plaintiff witnesses a traumatic event, perhaps a close relative being run over, or perhaps the plaintiff himself was almost run over. He was in the zone of danger. Defamation cases, there's another example for an appropriate use of emotional distress, but it has never, as far as I've ever known, never been applied in cases of bodily injury. And the reason is simple, because in bodily injury cases, you get an award for pain and suffering, and the case law defining the concept of pain and suffering states that it includes mental anguish. So how do we get emotional distress in addition to mental anguish? What's the difference between the two? Now, Mitchell was depressed after his injury fully manifested itself when he underwent surgery. He had a doctor tell him that he might be suffering from ALS. He had to wait a while, a couple of weeks or so, until they found out that that diagnosis was inaccurate. I can understand why that would be distressing. That would be mental anguish of anybody that goes to a hospital. Let me ask, even if the instruction, even if it's error, I looked at the arguments, you know, opposing arguments and stuff, and it is, even if that's error, is there any reason on the record to think, I mean, emotional distress type things can be recovered in a personal injury case, right? It comes under pain and suffering. You can talk about it here. Under the rubric of pain and suffering. Right. But so they've got to assess it, the jury, if they're going to add it even under pain and suffering, the jury's got to assess it in mind. And so I guess what I'm saying is, if it's error in this case, is there any, looking at the way the case is argued, is there any evidence that that part was anything less than harmless? That any evidence to suggest that the jury did count it twice, in other words, and didn't take that element of what would normally be pain and suffering, line it out over here, and then consider the other aspects of pain and suffering under pain and suffering. I cannot imagine a single situation where it would be considered harmless, Your Honor, with respect. And I believe what you have here is that the jury was encouraged to look at pain, the physical pain, and mental anguish as two separate elements of recovery, both of which should be accorded their own damages. I think that the mental anguish in this case, or emotional distress award, was very significant. And I think that without that additional recovery line, I don't think that those damages would have been awarded. In the event, how can we know what the jury was thinking? What we do know is that it was inappropriate. It was inappropriate to establish that there is a difference in a bodily injury case between the depression that one suffers as a result of bodily injury and the emotional distress. Anyone who is injured is going to experience depression. Anyone who is injured is going to go to a doctor and endure mental anguish and emotional distress when they tell them that perhaps you'll lose your arm, but we'll try to save it. Perhaps you'll go blind, but we'll try to keep your eyesight. You have to wonder why this ever happened. Look at the Babikian's decision. The Babikian states without any authority that the Illinois Supreme Court says damages for emotional distress are available to plaintiffs in cases involving personal torts such as medical negligence. They cite the Clark case, the Illinois Supreme Court decision. It's an interesting thing happened here. The Clark decision came down at about the same time as Babikian, but it was modified. That sentence that Babikian refers to no longer exists. You might have noticed, and I pointed this out in my brief, Babikian says, well, the Illinois Supreme Court stated this rule and relied on the Cummings decision. And guess what? You look through Clark's case, Cummings is not even mentioned. It's not mentioned at all. So how did that happen? It's because the Illinois Supreme Court revised its decision before it became final, and here is how the decision reads now. The nature of the error is evident when one considers that damages for emotional distress are available to prevailing plaintiffs in cases involving personal torts such as defamation, conversion, and misappropriation of identity. The court corrected its ruling. It left out medical malpractice decisions or other bodily injury torts. Accordingly, the Babikian decision is without basis. It has created a dangerous precedent, one that has to be corrected, because from now on, no matter what the injury, no matter how minimal, you're going to have a recovery for pain and suffering and emotional distress, and it doesn't matter how much pain you suffered. You may not have suffered any pain, because under emotional distress, you're recovering for the fear of pain, and that's the big difference. Thank you. Thank you, Mr. Unrath. Thank you, Mr. Wolff. Good afternoon. Counsel, may it please the court. My name is Nelson Wolff, and I'm here on behalf of George Mitchell, who was the plaintiff below in this FELA case that was tried over a period of eight days in Hancock County. We present ourselves today to ask that this court affirm in all respects the judgment that was entered by the trial court, because the trial court did not abuse its discretion in any of the three or four ways that have been asserted here in the brief or in the oral argument, and because the trial court properly entered a directed verdict against the railroad on its two affirmative defenses with respect to the statute of limitations and with respect to its assertion of contributory negligence. Now, in this eight-day trial, there were expert witnesses and other witnesses that were brought in from around the country, and it's important to note, I think, that as you carefully consider this decision of this substantial judgment, that the railroad does not dispute that its negligent conduct caused George Mitchell to sustain significant neurological spine injuries that necessitated two spine surgeries, including the fusion of four of six cervical vertebrae and the removal of four herniated discs, and that these injuries are not disputed that they have disabled him from his job as a track maintenance worker, nor is it disputed by the railroad that the amount of damages with respect to economic damages were excessive, even though they were a million dollars, or that the non-economic damages were not supported by the evidence. What the railroad is presenting to you in its first argument regarding the directed verdict on the statute of limitations is that it's seeking a get-out-of-jail-free card. It is seeking an excuse from its violation of the Federal Railroad Safety Law, the FELA, simply because George Mitchell did not rush off to the hospital and to the courtroom within three years of the date that he very first hired on with the railroad. And that is simply not what the law requires. To make such a finding would reverse almost 100 years, if not more, of FELA case law, as well as flying the face of the United States Supreme Court precedent. He had no cause of action during those early years of work on the railroad because he never missed a day of work, as Justice O'Brien noted. He never obtained nor required any medical treatment. He had, importantly, at no point in time outside the statutory period, at no point in time did he experience any symptoms of a herniated disc. Well, didn't, in fact, your expert say that he required medical treatment earlier? He did not say that. Had he gone to a doctor, had they got him to a doctor earlier, that he would have seen that he was hurting himself? No, I do not believe that that is what Dr. Wilkie's testimony that was cited in the defendant's brief does not support that statement, does not support that at all. And I will address that with respect to the record on that point, but what the evidence is in here, because I think it's important to identify at the beginning, because this will frame the major issue on the statute of limitations, is that contrary to the Railroad Council's assertions to you at the very beginning of its oral argument, and contrary to what it's written in its own brief, there is no evidence whatsoever that George Mitchell experienced symptoms of a herniated disc at any point in time outside the three-year period of limitations. Now, as he stood before you, he asked you to imagine these things, and that's what it will take. His imagination, because there is nowhere in the record that supports that assertion. And in fact, when I look at page 8 of the defense brief, it admits that George first experienced numbness and tingling in his arms and hands in late 2007. It says that on page 8, and then over on page 10, it acknowledges that he started having numbness in his first three fingers and in the rest of his hand in October of 2008. So there is no evidence whatsoever that he had an injury of a compensable nature under the FBLA outside of the statutory period. What is the guiding principle in this case? Not necessarily the FBLA statute, because it just says a three-year statute of limitations, but the case in Urey v. Thompson, 1949, decided by the United States Supreme Court. It does address these types of cumulative trauma injuries, repetitive strain, or occupational diseases. In that case, as was pointed out by both sides, there was a long-term 30-year exposure to silica dust, which resulted in what the court characterized as progressive injury. Symptoms progressed to the point that the worker became disabled 30 years after he first started working for the railroad. And so the railroad argued to have the case dismissed, just like you're hearing here today, that there should be no determination by the jury, or alternatively here, that is the suggestion. But the Supreme Court rejected that type of argument and said that the statute does not begin accruing and the injury does not happen until the accumulated effects of the exposure manifest themselves. And so in the Urey case, the manifestation did not happen until there had been sufficient progression of the illness to the point that that worker could no longer work. And then he was diagnosed by a doctor with silicosis and his career was over, and soon after that he filed his civil action. The court in that case determined that there was no reasonable jury that could have determined otherwise, and so that issue was never allowed to go in front of the jury. And in this case of Mitchell, it closely tracks with the Supreme Court address in Urey, because here there is no evidence whatsoever of a herniated disc. This case was filed because of the injuries of the herniated disc. The surgeries were done because he had herniated discs in his neck. And sometimes we take for granted in arguing these FBLA cases that everybody knows what herniated discs are and the significance of it is, but it is a neurological injury where you have a disc that bulges out and pinches on a nerve root. And when it's on the neck, it pinches on the nerve root that goes down and causes neurological symptoms. And Dr. Tyag, whose testimony is quoted in the Railroad Brief, acknowledges that there was no evidence whatsoever to support a diagnosis that he had a herniated disc until sometime in late 1907 or early 2008 when he had these symptoms. And so the Railroad can point to no evidence in the record from any doctor whatsoever that there was an injury which manifested, a herniated disc which manifested outside of the statutory period. That fact alone is dispositive of the statute of limitations issue. And under that evidence, rather the lack of that evidence, there is no entitlement to submit this issue to the jury. So the trial court was correct in taking this issue away from the jury after the Railroad was given every opportunity to put on evidence, but not even its own doctors provided testimony that there was a herniated disc outside of the statutory period. And absent a herniated disc, there's no surgery. Absent a herniated disc, there's no evidence of any disability, no damages, and no compensable injury. The Railroad would say that he should have rushed off and filed the case because he was experiencing soreness in his neck, that he had whiplash type of effect as he's using this crowbar, pry bar, claw bar type of device. But that's not sufficient evidence of an injury, and certainly not of a herniated disc, to start the clock ticking. Because if that's the case, then not only is a Railroad worker required to race off to the courthouse and file it right away, but then he loses the right to bring an action if later on the symptoms and the exposure accumulate and then manifest themselves into a herniated disc. And certainly that would be irrational, and that would be contrary to the humanitarian purpose of the FELA. And that disposes of the statute of limitations issue. Now, with respect to this contributory negligence issue, on which the trial court also properly disposed of, there again was no evidence whatsoever to support submission to the jury of contributory negligence. The basis of the Railroad's submission, reported submission, would be that George Mitchell failed to seek earlier medical evaluation. However, as a matter of law, that is not a sufficient basis to support the submission of contributory negligence. That isn't contributory negligence. There was not one case cited by the Railroad in its brief to support that argument. Not one. And you'd think, with the FELA being around for 100 years, that they might find one case, but there was not one. Contributory negligence is simply defined as a careless act or omission on the part of the Railroad worker which adds new dangers to unsafe working conditions. It's not enough to say that he should have stopped working, because that constitutes a sanction of the risk which the FELA, by statute, abrogates. It bars. It's one of those remedies that favors the employee to allow a liberal remedy. It was undisputed that, in this case, that George Mitchell followed his manager's instructions, that he used these tools the Railroad intended that he used. Rather, it was the fact that the Railroad slashed its work crews and increased the overtime hours that they had to work that exposed them to an unnecessary risk of developing these cumulative trauma disorders over time. And even if this were to be submitted, somehow or another, there was no evidence whatsoever to support the assertion that the Railroad makes in its brief, and here today, that Mitchell should have seen a doctor, and that had he seen a doctor, that this injury may not have happened. That was the argument that you just heard. But there was no evidence of that whatsoever. From the company's doctor who they brought in from out of town, he didn't say that. Dr. Wilkie did not say that in the portion that was cited in the Railroad's brief. He did not say that. And, in fact, when George Mitchell saw the first doctor, his family doctor, he said, well, with those symptoms of numbness and tingling that you've been recently having, I think you have carpal tunnel syndrome maybe, but keep working. Here, take some anti-inflammatory medications. As those symptoms worsened, he was seen by a neurologist or a neurosurgeon in Iowa, and then by Dr. Tyag, who saw him in Quincy. And even Dr. Tyag did not take George Mitchell off of work right away. He did further testing. And so certainly there is no evidence that before the statutory period, which would have been in 2006, late 2006, if you assume the earliest symptom in the record is late 2009, there is no evidence on record that any doctor would have told him he should have quit the job or that he had a diagnosis of a herniated disc. So you can't put the cart before the horse and say a doctor or somebody would have told him to quit the job because he had a herniated disc when you don't have any evidence that there was a herniated disc outside of the statutory period. Thank you. And in any case, the willingness of an industrial laborer to continue working under what undisputedly, at least in this court, are unsafe or dangerous working conditions, is not something that constitutes contributory negligence. That is, by its very definition, assumption of the risk. The other points on appeal that were raised is emotional distress was the only other issue that was discussed in the argument. I'm going to rely on our brief with respect to the final two issues. But there is no prejudice whatsoever, as your honors have noted. In the questioning, I articulated as the trial attorney for George Mitchell the different elements of damages for emotional distress and for pain and suffering. They didn't overlap. There's no evidence that they were duplicative or excessive whatsoever. And the railroad has not provided a shred of evidence that there was any prejudice by the submission of these two lines on the verdict form. Moreover, the FELA allows, and it's just a natural understanding, that emotional distress is a compensable damage and is distinct from pain and suffering damages that this man, George Mitchell, undoubtedly had as railroad counsel has admitted. Those damages aren't limited. Counsel, it's kind of a Pandora's box. You have a separate line for emotional distress. In this case, you could have it in any case, in any court case. Do you think that that's appropriate? I mean, is that what you're saying to us? I don't think that the court has to address whether or not it would be appropriate in every personal injury case. No, I'm not saying that. But I mean, I guess that's a Pandora's box argument. And if it happens, is it out of the box and a danger? I don't think it constitutes a Pandora's box, your honor, especially if the trial court limits and makes sure that the closing argument is appropriate because the evidence certainly is admissible. There's no dispute here in this case that the evidence of depression, the fear of ALS, the fear of paralysis, the loss of an identity as a provider for the family is a compensable element of damage separate from the pain and the suffering that one experiences when undergoing significant surgery and rehabilitation. I don't think there's any dispute that those are compensable elements. And so I would disagree that there is any risk of Pandora's box being open if there are elements to support those damages based on the evidence like we undisputedly have here. And so there is just no evidence that this constitutes a cumulative or an excessive award under all of the evidence here. Have you, I mean, is there anything distinct about FELA law that, in other words, that would cause us to address that situation different than any other, say, common law tort case in Illinois as far as that instruction? Because, I mean, have you ever seen one case where, because there probably is emotional distress, you know, suffering in a personal injury claim if somebody's truly injured, that is in every case. And I've got to say, I've never, I just, if you're the first, fine, but I've just never seen this instruction ever given before in a personal injury claim other than like a bystander, you know, negligent or intentional infliction of emotional distress or other issues. I mean, do we have to look strictly at FELA cases to come to the conclusion that this is correct or is this a good position? This would be proper in any tort claim. Sure. I think the court certainly should be guided by the distinct qualities that are the FELA claim and substantive law because that is the overriding consideration as opposed to state court procedure and jury instructions because even though IPI has its own format for instructing the jury, it would not be appropriate to instruct procedurally if it is not substantively correct under the FELA. And so your Honor, to more directly answer your question, perhaps, is to say that, yes, Congress was very specific in affording railroad workers a liberal remedy to entitle them to full damages for all of their injuries and the consequences of those injuries, and that has been made clear in more recent United States Supreme Court cases such as a fear of cancer, even though it had not manifested in cancer yet, but there had been exposure and there had been silicosis. That was the heirs' decision. The U.S. Supreme Court thought that that was significant. So I'm not able to address whether or not in every personal injury case, but certainly I would say that in FELA cases, that is a factor that weighs in favor of allowing a jury to order the railroad to pay compensation where these elements of damages are present. And, again, I think that in any case where that is present, and certainly in cases that I've argued across the country on behalf of railroad workers, these elements are always compensable whether or not it's on a separate line or not. And I think that that really is just an argument of form over substance. Thank you for your time. Thank you. And Mr. Henry. Thank you. Just a few short comments. Counsel points out, opened his argument by noting that we never disputed the liability. We never disputed that we were responsible for his injury. In a normal common law action, that would fall into the manifest way to the evidence standard, which is a very high standard. If there's any evidence supporting it, it's going to be affirmed. Counsel is a FELA expert. He does a lot of railroad cases. So I'm sure he understands that an entirely different standard applies in FELA actions. There's a wonderful case. I looked for it. I can't find the citation, but it's by Rovner on the Seventh Circuit. And she said, in FELA cases, they increase or lower the standards so much, as she put it, she goes, we send cases to juries that are as thin as pigeon bone soup. That gives you an idea of the standard we were up against. There's a reason we didn't argue liability on this case, because there's no point in it. Under FELA, the standard is so incredibly high that no one would bother really wasting their time with it. Now, he disposes of the entire statute of limitations argument by pointing out that, well, there were no symptoms of a herniated disc. And what he's trying to tell you there is the injury had not reached maximum severity in his first year or his second year or his third year. Well, that's not required. As a matter of fact, the law is clear. An injury need not reach its maximum severity. The fact that he was getting symptoms of a serious injury is sufficient. That's enough to trigger the statute of limitations. That's enough to require him to act diligently and seek out medical attention. Now, he also pointed out that Mitchell used his tools correctly, that he didn't have any fault here. He wasn't contributorily negligent in the way he was using tools. We've never raised that argument. We've never suggested that he was. It's not his use of the tools that makes a difference here. It's the fact that he was the only one that suffered this particular type of injury. Moving on to the emotional distress. Let me back up just a second. Did you have any cases that say that failure to seek medical attention is contributory negligence? It's statutory under the FELA Act that anything, a failure to act reasonably for your own safety, can be used as a damage-reducing element in a case. It certainly doesn't bar the case. It just reduces the damages, and it is an issue of fact for the trier of fact. He points out that FELA does allow damages for emotional distress, and that's true in a limited sense. I believe it's the Norfolk decision that allowed emotional distress, but it wasn't a bodily injury case. In that case, the plaintiff was allowed to pursue damages for emotional distress because of her fear of contracting asbestosis. Now, in terms of emotional distress in bodily injury cases, counsel has pointed to no case. In this case, wasn't there evidence of fear of ALS? Yes. I think in any injury, any slip-and-fall injury, am I going to have a limp for the rest of my life? Well, but what's the difference between the case that says fear of cancer and fear of ALS? I mean, if the courts have said fear of cancer, you can get damages for emotional distress, how do we distinguish that from somebody who testifies they had fear of ALS? When somebody has fear of getting cancer or, as in the case I mentioned, fear of getting asbestosis, they cannot get an award for pain and suffering because there's not been no bodily injury. The only injuries they can get compensated for are emotional distress. In bodily injury cases, you can recover pain and suffering, and virtually all of the case law interpreting that phrase, pain and suffering, states that it incorporates mental anguish. The notion that providing a separate verdict line is harmless error, that we were supposed to put evidence on, that we were prejudiced, there's only one way we can do that is sit down with the jury and say, what was going through your mind when you made this award, and we're not allowed to do that. You have one minute. We see that this trial was misguided and reached a wrong result on a number of bases. I still urge the court to review the statute of limitations, even if the court believes that we did not prevail on that issue. The fact remains that it is an issue of fact for the jury, not for Judge Gambrel. The same is true for contributory negligence. He pointed out that no expert had ever testified as to a failure to seek medical attention, and yet his own expert, Dr. Wilkie, said when asked, if he's developing problems such that pressure is being put on these nerve roots and scar tissue is developing, does that increase the risk of developing permanent nerve damage unless the patient can get to a doctor early? And his response to that question was, absolutely. I don't know that we need to say anything more about that issue. It's clear, not only from expert testimony, but as a matter of common sense, that seeing a doctor early may very well have prevented this injury. This case may never have arisen. That's all I have. If there are no further questions for the court, thank you very much. Thank you, Mr. Unrath. Thank you both for your argument today. We will take this matter under advisement, get back to you with a written disposition within a short time. And we will now, I guess we'll adjourn for the evening and begin again at 9 o'clock in the morning. Thank you. Please rise.